UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　v.<br>ANGELO VALDEZ,<br>　　　　Defendant. | Case No. 18-cr-00608-JD-1<br><br>**ORDER RE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE DNA EVIDENCE**<br><br>Re: Dkt. No. 36 |

This is a criminal case charging defendant Angelo Valdez with theft of government property (including a 2018 Chevy Tahoe belonging to the FBI), in violation of 18 U.S.C. § 641; as well as depredation against property of the United States (*i.e.*, the Chevy Tahoe), in violation of 18 U.S.C. § 1361. Dkt. No. 9. The case is set to be tried to a jury beginning on February 20, 2019. Defendant moved in limine to exclude the government's DNA evidence. Dkt. No. 36. The Court indicated at the pretrial conference that it would likely grant the motion. This order confirms the exclusion and explains why.

**BACKGROUND**

This case was reassigned to this Court on January 22, 2019, so that the defendant could be tried within the time period provided by the Speedy Trial Act, 18 U.S.C. § 3161. On January 23, 2019, the Court held a hearing and at that time ordered "that any proposed expert testimony (including on DNA evidence) that a party intends to offer at trial must be disclosed to the other side by 5:00 p.m. on February 4, 2019." Dkt. No. 27. The Court expressed concern that the government had waited too long to raise the issue of a possible DNA expert, report and testimony, and that defendant's due process rights, among others, would be unfairly infringed with further delay in handing over its proposed DNA materials.

The government's efforts to make a proper disclosure were disappointing. Defendant indicates that he received on January 29, 2019, a cursory five-page report from the government that was "prepared by Erin Laurie at the Serological Research Institute about DNA evidence tested in this case." Dkt. No. 36 at 2. The report did little more than recount where the testing samples had come from -- namely, from bottles found inside the FBI garage that had allegedly contacted defendant's urine and saliva -- and then jump to the purported statistical conclusion. For that, the report stated that defendant's DNA does not match the sample from a water bottle, but for the urine, "[a]ssuming two donors, the DNA evidence is at least 4.25 quadrillion times more likely to have arisen from Angelo Valdez and one unknown, unrelated donor than from two unknown, unrelated donors. This likelihood ratio provides extremely strong support for the inclusion of Angelo Valdez to the mixture from item 2." Dkt. No. 36-1, Ex. A at 5. For another bottle lip and cap, the DNA "resulted in a mixture of at least two donors with a major male donor and a trace donor. The major male donor profile is the same as the profile of Angelo Valdez. The chance that a randomly selected unrelated individual would have the same DNA profile is 1 in 22 octillion." *Id*. How these conclusions were reached, and what methods and protocols used, were hardly even mentioned, and other information going to the validity and reliability of the conclusions was also not presented.

Defendant asked to exclude the DNA evidence and opinions because the produced SERI report was inadequate under Federal Rule of Criminal Procedure 16(a)(1)(G) for failure to sufficiently describe the "bases and reasons" for the witness's opinions or the witness's qualifications. Dkt. No. 36 at 3-5. Defendant also sought exclusion under Federal Rule of Evidence 403 because the "DNA evidence is of low probative value and is unfairly prejudicial, confusing, and misleading," and because the evidence "is also potentially cumulative, as the government intends to introduce fingerprint evidence, physical evidence, and testimony that it says all demonstrate Mr. Valdez's guilt." Dkt. No. 36 at 5-6.

The government submitted a very brief response to defendant's motion in which it stated that "[o]n February 1, 2019, the government produced more than 1,200 pages of discovery (AV-01117 -- AV-02327) containing 'all evidence in the government's possession relating to DNA

testing of the evidence in this case, including reports, raw data, underlying notes, charts, tables and other information from the FBI and the Serological Research Institute ("SERI")."'" Dkt. No. 44 at 4. On that basis alone, without any further discussion of the evidence or argument, the government requested that the Court deny defendant's motion to exclude DNA evidence as "moot." *Id*. at 5.

On February 6, 2019, defendant filed a supplemental brief in support of his motion to exclude the DNA evidence. Dkt. No. 45. That brief described the government's discovery produced on February 1, 2019, as consisting much more of "discovery related to DNA testing undertaken by the FBI DNA Casework Unit (the results of which the government is not seeking to introduce in this case)" and very little of information related to "SERI and its probabilistic genotyping software." *Id*. at 9. The supplemental brief also attached the government's letter dated February 4, 2019, which, "[p]ursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)," provided a "summary of the testimony that the government intends to elicit under Rules 702, 703 and/or 705 of the Federal Rules of Evidence during the trial of Angelo Valdez." Dkt. No. 46-6 at 1.

This order follows a hearing on the motion on February 7, 2019, at which time the Court heard the parties' argument and took the motion under submission. The Court now grants exclusion of the DNA evidence on the following two grounds.

## DISCUSSION

**I. THE GOVERNMENT HAS NOT COMPLIED WITH FEDERAL RULE OF CRIMINAL PROCEDURE 16(A)(1)(G)**

As this record indicates, the government's effort to introduce DNA evidence and expert opinions at trial is a day late and a dollar short. Rule 16(a)(1)(G) requires a "written summary" of any expert testimony the government intends to offer, and the rule specifies that the "summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The plain purpose of Rule 16 is to prevent exactly the situation threatened here -- a defendant facing imminent trial without an adequate opportunity to prepare for evidence that the government intends to use against him. The Advisory

Committee Note to the 1993 Amendment of Rule 16 underscored this intention "that the bases and reasons must be sufficient to allow counsel to frame a *Daubert* motion (or other motion *in limine*), to prepare for cross-examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *United States v. Cerna*, No. 08-CR-0730 WHA, 2010 WL 2347406, at *1 (N.D. Cal. June 8, 2010).

The government's barebones disclosures fall short under this standard. They addressed the expected testimony of "Forensic Serologist Erin A. Laurie of the Serological Research Institute" in about one page, and summarily stated:

> (1) She will explain the testing methods used to test the yellow liquid that the FBI recovered in a Dr. Pepper bottle found inside the Dodge Sprinter crisis response vehicle. She tested the liquid for the presence of her urine with positive results, as reflected in her report, which was provided to you under Bates numbers AV-02235 through AV-02239.
>
> (2) The government expects her to explain the methods used to extra DNA from the aforementioned yellow liquid and Dr. Pepper bottle, a Kirkland plastic bottle, and a buccal swab of defendant Angelo Valdez. She will explain the methods used to compare DNA extracted from the evidence to the DNA profile of the defendant. She will testify about mixtures of DNA and particular issues that arise when DNA reflects a mixture of more than one source. She will also testify regarding the ability to identify a major contributor to a mixture of DNA and analyze the DNA profile of the main contributor. She will explain the methods used for statistical analysis of DNA evidence in general and as applied to this particular case. She will testify to the quality control procedures employed by the Serological Research Institute in this and every similar case.

Dkt. No. 46-6 at 3.

These descriptions are mere generalities. They do not state what the substance of Ms. Laurie's testimony will be. For example, the letter states that she will "explain the methods used," but nowhere does the government actually inform the defendant what those methods were. And while the letter points to "her report," that report is of scant help because it, too, does not adequately explain her methods.

It is curious that the government suggests its production of "1,200 pages of discovery," Dkt. No. 44, cured this problem. It did not. Putting aside defendant's description in his supplemental brief of what was contained in that discovery, the production of additional

4

1    documents cannot satisfy a rule that requires a "summary" that "describe[s] . . . the bases and
2    reasons for [the expert witness's] opinions." Fed. R. Crim. P. 16(a)(1)(G).

Rule 16(d)(2) provides that, "[i]f a party failed to comply with" the disclosure obligations imposed by Rule 16, "the court may . . . (C) prohibit that party from introducing the undisclosed evidence." This case is being tried on a fast-track because defendant is exercising his Speedy Trial rights, as he has every right to do. Trial is just six court days away. In this circumstance, it simply is not fair to permit the government to introduce Ms. Laurie's testimony without having complied with Rule 16(a)(1)(G) and given defendant fair notice of the bases and reasons for her expert DNA opinions. The Court consequently orders it excluded under Rule 16(d)(2)(C).

## II. THE DNA EVIDENCE IS CUMULATIVE, AND THE COURT EXCLUDES IT UNDER FEDERAL RULE OF EVIDENCE 403

Another factor counting against the government is that the proposed DNA evidence would be cumulative in any event, as defendant pointed out. Dkt. No. 36 at 5-6. The government's filed response to defendant's motion did not address this point at all. *See* Dkt. No. 44 at 4-5. At the hearing, the government tried to finesse this problem by saying that the other evidence was merely circumstantial and the DNA evidence was the only direct evidence placing defendant inside the FBI garage. This suggests something of a misunderstanding of the issue. As our model criminal jury instructions state, either direct or circumstantial evidence "can be used to prove any fact. The law makes no distinction between the weight to be given to either direct or circumstantial evidence." Ninth Circuit Model Criminal Jury Instructions Rule 1.5. The government has not disputed defendant's assertion that the government's evidence will likely include "fingerprint evidence, physical evidence, and testimony." Dkt. No. 36 at 6; *see also* Dkt. No. 46-6 at 1-3 (government's Rule 16(a)(1)(G) letter confirming its intent to present a fingerprint expert at trial). That is ample ammunition to use at trial.

The inherent nature of DNA evidence raises yet another troubling problem. The parties agreed at an initial scheduling conference that trial would take only two to three court days. That is because the charge against defendant and the facts to be adduced are straightforward. Suddenly throwing DNA into this mix would wildly alter the schedule and unnecessarily complicate the

trial. While DNA evidence can have a proper place in a trial, it is complex science that requires careful review and assessment, lest a jury be led astray by junk science. At a minimum, the government will first have to establish admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). Rule 702 provides that to be admissible, an expert's testimony must be "based on sufficient facts or data," be "the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." *Daubert* also requires that a party seeking to introduce scientific testimony must establish that "the reasoning or methodology underlying the testimony is scientifically valid." 509 U.S. at 592-93. That is just step one. The opposing party of course has the right to contest all of this with its own expert and report.

The government has failed to anticipate or plan for any of this, and never mentioned it at the scheduling conference where it agreed to a two- or three-day trial. Without actually making a *Daubert* ruling at this time -- because the government did not proffer the facts or argument for that -- the Court concludes that determining the admissibility of Ms. Laurie's testimony under Rule 702 and *Daubert* would swallow up a great deal of time, and would almost certainly double the length of trial, or more. Weighed against the fact that the evidence would be cumulative anyway, even if Rule 16 permitted admission, which it does not, the DNA evidence is properly excluded under Federal Rule of Evidence 403, for threatening "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## CONCLUSION

The Court orders the DNA evidence -- specifically, the proposed expert testimony of Forensic Serologist Erin A. Laurie of the Serological Research Institute -- excluded from the trial in this case, under both Federal Rule of Criminal Procedure 16(d)(2)(C) and Federal Rule of Evidence 403.

**IT IS SO ORDERED.**

Dated: February 11, 2019

JAMES DONATO
United States District Judge

6